**UNITED STATES of America**

v.

**Alayne Barry ADAMS and Mayo L. Coiner, Defendants.**

**No. 86–20083–4.**

United States District Court, W.D. Tennessee, W.D.

Sept. 21, 1989.

Sidney Alexander, Asst. U.S. Atty., Memphis, Tenn., for U.S.

Kathleen Caldwell, Joseph L. Patterson, Memphis, Tenn., for defendants.

## RULING ON MOTION FOR DISQUALIFICATION OF JUDGE ROBERT M. McRAE

McRAE, Senior District Judge.

This matter is before the Court and more particularly Senior Judge Robert M. McRae (hereinafter the Trial Judge), who was assigned and tried this criminal case.

The case commenced with the return of a five-count indictment. Count 1 charged Alayne B. Adams and Mayo L. Coiner with willfully making and subscribing a U.S. income tax return for the year 1977 which was verified by a written declaration that it was made under the penalties of perjury and which Alayne B. Adams and Mayo L. Coiner did not believe to be true as to every material matter because the return stated that the occupation of the defendant Adams was "wife" and did not report income which Adams had received from the private practice of law, whereas Adams and Coiner well knew that the occupation of Adams had been a practicing attorney from which she had received income.

Count 2 charged a separate crime based upon the same allegations except it was based upon their joint income tax return for 1978.

Counts 3, 4 and 5 charged the defendant Adams with three separate violations of the crime of perjury under 18 U.S.C. § 1623 based upon her testimony under oath in a deposition and as a witness in a hearing before one of the magistrates in the Western District of Tennessee, pertaining to the civil case, *Adams v. EEOC*, 81–2578. That case was an employment discrimination suit filed by Adams as an attorney employed by the EEOC. The Trial Judge herein had nothing to do with that civil case.

The attorney for the defendants in this criminal case filed a Motion to Dismiss the indictment on the ground that the prosecution had been initiated in retaliation for the sex discrimination suit the defendant Adams had filed against the EEOC. As heretofore indicated, Adams and Coiner are married to each other.

The Trial Judge denied the application of the defendants for discovery beyond Rule 16, Fed. Rules of Crim. Procedure, on the retaliation claim. The motion to dismiss was heard on affidavits without holding an evidentiary hearing with proof offered through witnesses testifying subject to cross-examination. The Trial Judge dismissed the motion, and the case went to trial. The jury returned verdicts of guilty as to both defendants on Counts 1 and 2. On Counts 3, 4 and 5, the sole defendant Adams was found guilty as charged.

Standard instructions were given to the jury. These included an instruction that all

of the crimes charged required proof beyond a reasonable doubt that the defendants made false statements which he or she knew to be untrue under the penalties of perjury or under an oath to tell the truth. The jury was further instructed that the proof must establish beyond a reasonable doubt that the defendant being considered acted with criminal intent. With regard to all five counts, the Trial Judge instructed the jury that they were not to consider the materiality of the alleged untrue statements because that is a matter for the Court under the law. Therefore the jury unanimously found that both defendants *lied* under the penalties of perjury in the matter of the crimes charged in Counts 1 and 2. In the matter of Counts 3, 4 and 5, the jury unanimously found that Adams had *lied* under oath three times.

The convictions were appealed, and the Court of Appeals remanded and reversed in part. *United States v. Adams*, 870 F.2d 1140 (6th Cir.1989). The conviction of the defendant Adams of perjury in Counts 3, 4 and 5 was reversed because the Court of Appeals concluded that the trial judge erroneously determined that the untruths stated by the defendant Adams were material to the proceedings in which the testimony was given.

In the matter of the convictions of both defendants in Counts 1 and 2, the Court of Appeals held that the case should be remanded for further proceedings on the pretrial motion of both defendants that the indictment should have been dismissed on the "ground that the prosecution had been initiated in retaliation for a sex discrimination suit that Ms. Adams had filed against the United States Equal Employment Opportunity Commission." The Court concluded "that this is one of those rare cases where the defendants are entitled to discovery on the issue of whether the government's decision to prosecute was tainted by improper motivation." 870 F.2d at 1141.

The Court of Appeals gave explicit remand directions to the district court as follows:

> It will be time enough for the district court to consider whether an evidentiary hearing should be held after discovery has been completed—and we are confident that the district court will not let the discovery get out of hand. Discovery should be confined to the narrow issue of whether the EEOC, acting on an improper motive, induced the Department of Justice to institute a prosecution that would not otherwise have been undertaken. 870 F.2d at 1146.

Neither the reversal of the perjury counts against the defendant Adams nor the remand of the false income tax return counts were based upon any error pertaining to the factual issues submitted to the jury. In fact, the Court of Appeals affirmed the Trial Judge upon the defendant's appeal for a new trial upon "the allegedly erroneous evidentiary rulings made by the district court." On this appellate issue, the Court of Appeals stated:

> having read the transcript in its entirety, we are not persuaded that a new trial would be warranted. On the whole, the defendants were given ample opportunity to get their story across to the jury. 870 F.2d at 1146.

Attempted efforts by the attorneys for the United States to obtain a review or reconsideration of the ruling of the Court of Appeals set forth in 870 F.2d 1140, were unsuccessful. When this was made known to the Trial Judge, a conference was scheduled in order for the Court to prescribe the scope of and time for the discovery and the procedural methods of complying with the directions of the Court of Appeals, to grant and restrict discovery in order to determine if an evidentiary hearing would be necessary. This conference was considered to be similar to a Scheduling Conference conducted by the Court in civil cases pursuant to Rule 16(b) of the Rules of Civil Procedure. This Trial Judge has followed the practice of handling such conferences informally in chambers, in the courtroom or over the telephone, and preparing and filing an order which sets forth the matters decided by the Court at the conference.

The Scheduling Conference in this case was held on July 28, 1989, in the Court's chambers with the Trial Judge presiding.

In attendance for the United States was Sidney Alexander, an Assistant United States Attorney, who had no previous involvement with the trial or appeal of this case. He was assigned the proceeding to avoid a possible conflict by Devon Gosnell, the Assistant United States Attorney who tried the case in the district court and argued it before the Court of Appeals. Kathleen L. Caldwell, the attorney who argued the case for the defendants in the Court of Appeals was given notice and attended the conference for the defendants. She brought with her Joseph L. Patterson, an attorney who had not appeared in the case previously.

The Court made certain remarks and observations in the light of the Court of Appeals remand directions pertaining to the "narrow issue" for discovery. Mr. Alexander and Ms. Caldwell spoke to the time and nature of discovery, and Ms. Caldwell indicated that it was her intention to file a motion to disqualify Hickman Ewing, the United States Attorney for this district, and all of his Assistant U.S. Attorneys from representing the United States in further proceedings in this case.

After the matters scheduling the discovery were completed, Mr. Patterson asked if a *nolle prosequi* might be entered. Because the question was beyond the subject matter of the conference and because Mr. Patterson had not appeared in any phase of the case, the Trial Judge undertook to explain why in his opinion the United States would not enter a *nolle prosequi.*

After the conference was adjourned, the Trial Judge caused to be filed on August 4, 1989, a Scheduling Order which prescribed the discovery procedures and ordered that "all motions such as motions to disqualify attorneys shall be filed without unnecessary delay." No motions to disqualify attorneys have been filed, but a Motion for Disqualification of Judge Due to Bias or Prejudice Pursuant to 28 U.S.C. § 144 (the Motion) was filed on August 31, 1989, in behalf of both defendants.

The Motion merely states that the separate affidavits of the defendants filed with the Motion as required by 28 U.S.C. § 144 show that Robert M. McRae has a personal bias or prejudice against them; therefore, he should proceed no further in the case and another judge should be assigned the case. The Motion is signed by Kathleen L. Caldwell and Joseph L. Patterson, as attorneys for the defendants. The affidavit of each party is accompanied by a certificate of the attorney that the affidavits are made in good faith.

The affidavits contain five numbered paragraphs. The typed contents of each is identical, except in the caption and in the spaces where the name of the affiant is typed by a word processor, the name Alayne B. Adams or Mayo L. Coiner is inserted respectively. In the separate affidavit of Adams, the affiant has made and initialed an interlineation in paragraph 5. The affidavits appear to be printed from the word processor or computer on which the attorneys' memorandum and the Motion were printed.

Numbered paragraph 1 states, "I am a defendant" in the case. In numbered paragraph 2, the affiant states, "I am informed and believe and based on such" allege that Robert M. McRae "has a personal bias and prejudice against me."

Paragraphs 3 and 4 refer to the defendants in the third person and state the following:

3. The facts and the reasons for the belief that such bias and/or prejudice exist are that on Friday, July 28, 1989, Judge McRae conducted a status conference on this cause following the reversal and remand of the action from the Sixth Circuit. In attendance at that conference were Sidney Alexander, Assistant United States Attorney, and Kathleen L. Caldwell and Joseph L. Patterson, Counsel for Defendants.

4. During that conference, Joseph L. Patterson suggested that due to the amount of suffering which the Defendants had already experienced, it would seem appropriate that a nolle prosequi would be in order. Judge McRae's response was to the effect that he would not entertain a nolle prosequi even if the government presented one. Further,

Judge McRae stated that the Defendants had lied and should suffer for the rest of their lives for that. Furthermore, Judge McRae stated that the reversal of Ms. Adams' convictions for perjury was based upon a mere technicality, that she was still a liar, and that they (Ms. Adams and Mr. Coiner) were still guilty.

### Law Applicable

■ The statute, 28 U.S.C. § 144, relied upon by defendants in their Motion states in pertinent part:

Whenever a party to any proceeding in a district court makes a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias and prejudice against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists. . . .

The affidavit referred to in the statute may be on information and belief, *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). Although there is a reference to "such judge" proceeding no further, the case law authorizes and directs that "such judge" make the determination of the legal sufficiency of the affidavit. *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir.1978). In doing so, such judge shall treat the facts of the affidavit as true. *Hodgson v. Liquor Salesmen's Union*, 444 F.2d 1344 (2nd Cir.1971). Furthermore, the Court in *Hodgson* held that the fact that the affidavits were based entirely upon hearsay, as these were, may be taken into account in judging the sufficiency of the affidavit. Also, it has been held that consideration may be given to whether quotations of the judge were taken out of context. *United States v. Birrell*, 276 F.Supp. 798 (S.D.N.Y.1967).

■ The affidavit of the parties must allege facts which, if true, would convince a reasonable person that personal bias exists. *Chitimacha Tribe of La. v. Harry Laws Co., Inc.*, 690 F.2d 1157 (5th Cir.

1982); *U.S. v. Baker*, 441 F.Supp. 612, 616 (M.D.Tenn.1977).

■ The alleged bias or prejudice must be personal and not judicial. *Oliver v. Michigan State Bd. of Education*, 508 F.2d 178, 180 (6th Cir.1974), citing *Knapp v. Kinsey*, 232 F.2d 458, 466 (6th Cir.1956). In *United States v. Baker, supra* at 441 F.Supp. at 616, the court said:

Moreover, the defendant must establish that the alleged bias and prejudice is personal stemming from an extra-judicial source and resulting in an opinion on the merits other than what the judge has learned from his participation in the case.

In *United States v. Azhocar, supra* at 739, the court held that the denial of a recusal motion by the trial judge for legal insufficiency was proper even though the affidavit reflected that the judge had said he would not believe anything the defendant testified to no matter what he said. The actual words were, "I wouldn't believe [defendant] if he said [it] on a stack of Bibles." Fn. 5, 581 F.2d at 739.

In *United States v. Hanrahan*, 248 F.Supp. 471, 477 (D.D.C.1965), the Court held that statements that the Court believed that the defendants were guilty of the crime for which they had been indicted and that he did not believe the testimony of the defendants as witnesses, were legally insufficient to support an affidavit of bias and prejudice.

■ If the affidavit is legally insufficient, the accused judge is under a duty to deny the motion to disqualify. *Hodgson v. Liquor Salesmen's Union, supra*, 444 F.2d at 1348.

In *Commonwealth of Pa. v. Local U. 542*, 388 F.Supp. 155, 159 (E.D.Pa.1974), the accused judge held if the motion did not warrant disqualification, he was "not only permitted to continue to preside over the case, [he] had an affirmative duty not to withdraw."

In *United States v. Birrell, supra*, at 809 (1967), Judge Herlands said:

It is the trial judge's duty to prevent a defendant from utilizing an affidavit of

prejudice for the sole purpose of delaying and otherwise unjustifiably embarrassing the administration of justice.

### Conclusion

■ In this case, all of the facts and reasons set forth in the affidavits are based upon comments of the Trial Judge made in response to a suggestion of attorney Patterson in a non-public conference called pursuant to the remand directions of the Court of Appeals. The factual allegations of the affidavits of the parties are based upon the oral account of their attorneys or one of them to the defendants and of necessity had to set forth the response of the Trial Judge to attorney Patterson's suggestion in a "to the effect" fashion rather than the precise words which were not available due to the lack of a court reporter being present. Therefore the total circumstances of the alleged offending remarks are not included in the affidavits.

It appears that the bias is based primarily upon the Trial Judge having allegedly used the words "mere technicality" when referring to the reversal of Adams' conviction of three counts of perjury and that both defendants had "lied" and were "guilty." See paragraph 5 of both affidavits.

The Trial Judge did not include paragraph 5 in the above account of the factual contents of the affidavits because it appears that paragraph 5 sets forth opinion and alleged reasons for the bias as opposed to the facts set forth in paragraphs 1 through 4. Paragraph 5, as prepared for execution by both defendants, has two sentences. It reads as follows:

5. Ms. Adams and Mr. Coiner have further challenged their convictions on the basis of selective prosecution and the Sixth Circuit has also held that they stated a prima facie case of selective prosecution prior to their earlier trial and were entitled to discovery and a full hearing on that issue, which they did not receive prior to their earlier trial. It would seem obvious that their allegations of selective prosecution, now before the court again,

are simply another "mere technicality" being asserted by two "guilty" "liars."

The first sentence appears to be a statement that prefaces the second sentence as the argument for a finding of bias. While the first sentence is substantially accurate in setting forth the reason that the matter is before the Trial Judge, it inaccurately expresses the opinion that the Court of Appeals held in its remand opinion that the defendants are entitled to discovery and *a full hearing* on the selective prosecution issue. Whereas the Court of Appeals stated: "It will be time enough for the district court to consider whether an evidentiary hearing should be held after discovery has been completed." 870 F.2d at 1146.

In the second sentence of paragraph 5, it appears that the person who prepared the typed draft was indulging in some ironical sarcasm, because he or she did not literally mean to assert that the allegations of selected prosecution by the affiants are truthfully a "mere technicality" asserted by Adams and Coiner who have been found guilty of being liars by the jury. In an attempt to remove the sarcastic overtone, Adams interlined as follows:

It would seem obvious that their allegations of

selective prosecution, now before the court again, are in the opinion of the court ABA simply another "mere technicality" being asserted by two "guilty" "liars."

The Trial Judge concludes that a reasonable person would find that a personal bias has not been shown after considering the allegations of the affidavits true but in the proper context of the total circumstances at the time of the remarks made by the Trial Judge at the Scheduling Conference on July 28, 1989. The total relevant circumstances and context of the Trial Judge's remarks were *in effect* as set forth below.

■ When attorney Patterson brought up the suggestion that a *nolle prosequi* would be in order, it was in the form of a question whether a *nolle prosequi* might be taken. Therefore the Trial Judge undertook to answer the question because the

Assistant U.S. Attorney present had not participated in the trial or appeal, nor had attorney Patterson.[1]

Both defendants and every attorney at the conference, with the possible exception of Joseph L. Patterson, knew that the words "mere technicality," which were relied upon as a basis of a showing of a personal bias against Adams, referred to a conclusion by the Court of Appeals, that the Trial Judge had erroneously determined as a matter of law that the lying under oath of Adams was not punishable even though the jury made a finding that she was guilty of being a liar under oath. Similarly both defendants were found guilty of lying under the penalties of perjury with criminal intent in tax counts. The jury findings of guilty to lies by both defendants were found even though the Court of Appeals held that there was no basis to grant a new trial because "[o]n the whole, the defendants were given ample opportunity to get their story across to the jury."

Both the defendants are members of the bar of Tennessee and this court which makes the act of lying under the penalties of perjury or under oath particularly reprehensible and even more so for Mayo L. Coiner who has the additional responsibility for integrity and respect for the law as a professor of law students. The Trial Judge did say that Ms. Adams would have to live with the finding announced in 870 F.2d 1140 that she had been found guilty by a jury beyond a reasonable doubt of lying under oath and that finding was made after a fair trial as to all matters which could have affected the jury's verdict even though her conviction was set aside for a non-jury reason. This very well could be considered a blemish on her character for the rest of her life if a thorough investigation is made for a legal or judicial appointment, a certificate of moral fitness, her reputation for truthfulness or any other similar reason.

In addition to the unresolved attack by the defendants upon the prosecutor for the alleged improper motive, at the time that attorney Patterson requested the *nolle prosequi*, his co-counsel Kathleen Caldwell had stated at the commencement of the conference that the discovery authorized by the Court of Appeals would have to be delayed so that a motion to disqualify the United States Attorney for this district and all of the attorneys on his staff from further proceedings in this case could be filed.

Query: Is it reasonable to think that the United States Attorney for this district would *nolle prosequi* this case without further proceedings and thereby risk having the defendants claim that the taking of a *nolle prosequi* was an admission by the United States Attorney that he or any member of his staff acted improperly in the presentation of this matter to the grand jury and subsequent prosecution of the case?

After treating the factual allegations of the affidavit as being the truthful account of the words used by the Trial Judge and placing them in the proper context, the Trial Judge concludes that affidavits filed in this case are not "sufficient" to establish that Robert M. McRae, the Trial Judge, has a personal bias and prejudice against either Alayne B. Adams or Mayo L. Coiner or both.

IT IS THEREFORE ORDERED that the proceedings shall not be assigned to another judge and the attorneys for Adams and Coiner shall file the Motion to Disqualify Attorneys within ten days, if one is to be filed. The discovery as prescribed in the Scheduling Order filed herein shall be commenced as soon as possible based upon the

---

1. A *nolle prosequi* is a formal entry upon the record by a prosecuting officer in a criminal action by which he declares that he "will no further prosecute" the case. Black's Law Dictionary 3rd Ed.

At the time of the remand, the defendant Coiner stated publicly that he and his wife had been vindicated, and the United States Attorney stated that he was desirous of proving in court that his office had not initiated this case in furtherance of an improper motive. Therefore it was unlikely that he would withdraw the tax prosecutions in the face of a remand in order to have a further investigation of "some evidence" in the record of vindictive prosecution.

determination of who shall represent the United States in these proceedings.

IT IS SO ORDERED.